Oh yay, oh yay, oh yay. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention where the Court is now sitting. God save the United States and this Honorable Court. All right, be seated please. All right, the first case we'll hear is IHRAP v. Trump and we'll hear from Mr. Waldman. Good morning, Your Honors. My name is Joshua Waldman here from the United States Department of Justice representing the appellants. In Trump v. Hawaii, Supreme Court held, quote, The government has set forth a sufficient national security justification to survive rational basis review. And in doing so, the court rejected precisely the same arguments that plaintiffs raise here. Because Hawaii is binding and controlling, the district court should have dismissed plaintiff's rational basis challenges to the proclamation. Hawaii's preliminary injunction posture and the motion to dismiss standard did not change that outcome. Counsel, let me ask you, I guess, something of a preliminary question. And I know you're very familiar with the language in the Hawaii decision. But let me read you just a couple of quotes that will set the stage for the question I want to ask you. So in describing the Supreme Court's decision in Mandel, the Supreme Court in Hawaii said, We limited our review to whether the executive gave a facially legitimate and bona fide reason. When the executive exercises this power negatively on the basis of a facially legitimate bona fide reason, the courts will neither look behind the exercise of that discretion nor test it by balancing its justification against the asserted constitutional interest of U.S. citizens. And then quoting the later decision, Fialo, it noted that the court concluded it is not the judicial role in cases of this sort to probe and test justifications of immigration policies. And then lastly, it added, again, in commenting on Mandel, when it comes to collecting evidence and drawing emphasis on questions of national security, the lack of competence on the part of the courts is marked. And then the court goes on to say, A conventional application of Mandel, asking only whether the policy is facially legitimate and bona fide, would put an end to our review. So why in this case would not we simply apply Mandel and stop? Well, I think that you certainly could. I think that would be an entirely legitimate way to decide the case. The Supreme Court, of course, in Hawaii went on to decide on a rational basis review. And I think we would. Well, you asked them to do that, didn't you? Pardon me? Didn't you ask them to do that? Well, that's what the court says. We thought that it was an alternative rationale that the court could decide under. And it was not, I think, clear at that point exactly what the distinction between rational basis review and Mandel would be. And there were some cases indicating that they might be the same thing. I think Hawaii makes clear that's not exactly so. That all you need is a, what the court said you need in order to show a facially legitimate and bona fide reason, is essentially what the court plurality said, excuse me, the concurrence didn't say, which is to cite a provisional law that's applicable on its face. And here that would be Section 1182F and the proclamation. And that would be sufficient to satisfy Mandel. I think you could hold that. But if you were. So do you, I mean, do you read the Supreme Court's discussion that I was referring to in Hawaii to be two alternative holdings, one citing Mandel and one based on a rational basis review? I don't quite read it that way. I read the holding as being a rational basis review, but strongly, strongly suggesting that. Well, they strongly suggested it's simply because of the posture that you presented to the court. Right. I mean, had you held tight, you don't quite know where they would have gone. But you basically said, open the door. We're welcome. Open the door. They said because the government invited an inquiry beyond Mandel. And they did do it on the rational basis test. But I think that was a little bit, not a little bit, it was overtly based on your posture. Right. I mean, I think you could decide it on either one, Your Honor. And I understand what you say on our strategic. I mean, you still want us to read through Mandel and reach the rational basis? I think that you could just easily decide the case on rational basis, since that's the way that the Supreme Court did in Hawaii. I don't think you need to reach Mandel. I think if you do. Let me ask that. If we rejected your, just hypothetically, if we rejected your rational basis argument, in that scenario, is it your view, we would have to address whether Mandel controls? Yes. Okay. So your argument is they don't even win under rational basis. Therefore, you don't have to answer the perhaps harder question, harder legal question of the full scope of Mandel. That's what you're asking us to do. And that's what you're taking Hawaii to do. Yes, Your Honor. We're just presenting a series of alternative arguments. I would say the first is rational basis as applied in Hawaii. And then if you rejected that, we would have our arguments under Mandel. And then we would have our, actually before you get there to the Mandel, you would have to reject both the rational basis, the national security justification, and the foreign policy information sharing purpose as well. If you rejected those, you would then move on to Mandel. And then you would ask the question of, is there a viable equal protection, establishment clause, and due process claims as well. So there's a series of alternative arguments. I don't at all think that you need to reach all of them. I think it's just easy enough to decide it under Hawaii and rational basis. But if we think you have it backwards, and that Mandel is clear on its face, there would be no need to reach into the other arguments. That's true. I mean, we could win on any number of our alternative grounds, and we'd be happy to have a victory on either one of them. But the Supreme Court in Hawaii did say we don't need to reach the Mandel issue because we think it survives rational basis review quite clearly. And I think this court should feel very comfortable doing exactly the same. This is about as on point a case as you could get, as almost as recent a case as you could get from the Supreme Court of the United States. And I think it's the proper course, I would think, is to just follow the reasoning in Hawaii. But we welcome a dismal and an alternative ground, Your Honor. I think that's more appropriate. Can I go back to your introduction? You began and you described the court, meaning the Supreme Court in Hawaii, rejected the same claims that the plaintiffs make here. Is that a necessary part of your argument? I mean, so imagine the hypothetical where the Supreme Court, for one reason or another, was not presented with any presidential tweets or candidate tweets, if you would. Would that change the analysis for us on rational basis review? I don't think so. But I think it makes the outcome of the case even clearer because there's. Why take the first question and then understand why it's clearer. Sure. But why don't you think that would change the rational basis question? Well, because the question on rational basis review is not whether the plaintiffs have something plausible to attack the policy of the law, but whether there's something plausible supporting it. And the Supreme Court listed, as I counted, nine reasons why the law is both rational and not explained by animus. But more important to Judge Richardson's question is that the rational basis review excludes subjective motives from consideration. I mean, Beach explained that Supreme Court statement in Beach under the rational basis. It said it is entirely irrelevant for the constitutional purposes whether the conceived reason for the challenge distinction actually motivated the legislature. That's entirely correct. And so the idea of a rational basis is to look at the face of the statute and not the reasons given by the president in his tweets or in his campaigns. Or it becomes irrelevant, at least under the Beach standard. Right. And that's why he actually looked at it precisely those statements and said it doesn't alter its analysis. And but I take the question. Well, I'm suggesting that that would be seems to me would be your appropriate answer. Judge Richardson's question whether it makes a difference if we were looking at the issue through a different precedent who had not tweeted. And the answer should be, I would guess it shouldn't make any difference. Right. That's right. And I think you could think of three or four different reasons why it doesn't matter under rational basis reviewing, including the one that you just gave, Judge Niemeyer, that is just the subjective motivations just aren't relevant. Another reason. I understand. And I take that point. That's the subjective. So instead of using the tweet example, use the waiver example. Right. So imagine the Supreme Court had not addressed waiver. My question was sort of focused. And just if you'll come back and just summarize it for me. You began by saying the courts rejected these very grounds already. You led with that. That seems to suggest to me that you think it's important. I'm just trying to understand why that matters to your analysis. I think it ultimately does. And I led with it because I think it makes it so clearly on point from Hawaii. And because the plaintiffs make the assertion that there's something new here that distinguishes it from Hawaii. And I don't think that's the case. But even if you were to grant that, the Supreme Court gave nine reasons why the law was rational, including its spatial neutrality towards religion, its express premise on a legitimate national security rationale, the worldwide review by cabinet officials and their agencies, the distinctions drawn between different countries and how they were explained in the proclamation itself, a proclamation the court noted was more thorough and well-reasoned than any previous order under Section 1182-F. The fact that it was based on the Visa Waiver Program enhanced its rational basis. And I could go on and on. And so if the plaintiffs come in and let's suppose it was something unaddressed by the Supreme Court in Hawaii and said, well, we think we can attack it from this angle or from that angle. Or they say, we have something new to pick off Rats 3 and 7. Well, you're only nibbling at the margins there. And the question under rational basis review is, is there any plausible rationale that could support the law? Not whether you can attack it from some angle or whether you have a plausible basis for attacking it. And so my contention would be, even if they weren't repeating the same arguments, if they're just trying to take paw shots here and there, that's not the standard under rational basis review. Rational basis review only asks whether there's a plausible explanation. And they want to say, for example, well, if we had a record, we could attack the evidence and the empirical data and show it's not a very good conclusion. Well, beach communication says you don't need it. You don't need empirical data. You don't even need to be correct. Your conclusion can be erroneous as long as it's plausible. And that's exactly what Hawaii held. So if you come in with something new, there's nothing you can do to negate every conceivable rational basis, which is the standard. So I don't think it would change the analysis. But I think it makes it a lot easier to say there's nothing new here from Hawaii. Why would you ever reach a different conclusion in the Supreme Court of the Ages two years ago when the arguments presented are precisely the same that the Supreme Court majority just rejected? Is that it? If there are no further questions, I would ask you to reverse with instructions to dismiss the complaint. All right. Thank you, Mr. Waldman. All right. Mr. Mosher. Good morning, Your Honors. May it please the Court. I'll start by addressing the argument that Hawaii forecloses litigation of our claims. In Hawaii, the Supreme Court held that the plaintiffs there were not entitled to a preliminary injunction. If I understand the argument, I don't think they're reaching so far as to say it forecloses it. I think they're saying that it addressed the issues, and the issues here are the same. And so we should be guided by them. The important part of that is that the different standard that applies on a preliminary injunction and on a motion to dismiss, and the Supreme Court clearly held in University of Texas v. Caminesh, that both findings of fact and, importantly, conclusions of law made in a preliminary injunction ruling are not binding at a trial on the merits. That's my point. I don't think they argued that it was binding. I think what they argued is that the Court conducted an analysis under the rational basis, under Mandel on a rational basis, and basically went through Mandel and reached the rational basis. And they said that analysis is equally applicable here. Right. But that analysis... Recognizing, I guess, that the preliminary injunction standard was what the Court was addressing in Hawaii. Right. But because of the preliminary injunction standard, the way the Court looked at the issue is to determine whether the Hawaii plaintiffs had proven, without the benefit of discovery, that they were likely to succeed on the merits of the claim. By doing that, by weighing the evidence, the Court was able to draw whatever inferences it thought was warranted. Here, on the motion to dismiss... I understand that argument, and I understand it clearly. I think it's well taken. My only question is, in reaching the conclusion that the Court reached, the Court did conduct a rational basis analysis, and did make determinations under that thing. My question is, should we ignore all the reasons that they give for that analysis, and are conducting that analysis? In other words, if we have to conduct a rational basis analysis, and I gather you agree with that standard, then are we entitled to look at Hawaii to see what we do on that? You certainly don't ignore it. I think the significant difference is the standard that you apply. To make it concrete... Well, that's the ultimate standard. Right. And let's talk about the worldwide review. That's really a central issue of both sides' theory of the case. What they argue is that because independent agencies looked at these issues and came up with the proclamation, that that kind of divorces it from campaign statements, from prior versions of the travel ban. This is kind of a new entry. What we say is... I think that's a straw man. I don't think that's their argument. I think their argument is that that's irrelevant under the rational review basis. In other words, you look at the face of the statute, and you look for any rational basis for that, regardless of whether that was the motivating basis. It's certainly an argument that they may... That's the beach standard. Right. That's the beach standard. Okay. So in the worldwide review, what the Supreme Court said, the only evidence that the Hawaii plaintiffs didn't have access to the report underlying the worldwide review, didn't have access to pre-decisional material. So the only thing that Hawaii plaintiffs had were the fact that this report, that purported to cover 200 countries, was 17 pages long. The dissent in the Supreme Court said it was willing to draw the inference that this wasn't a thorough review. What the majority said is that inference is not warranted because we don't know the contents of the report, and we don't know the extent of the pre-decisional material. Our position is on a motion to dismiss. We are entitled to every reasonable inference. The inference that Justice Sotomayor and Justice Ginsburg were willing to draw is sufficiently reasonable to give us the benefit of that now. And we can see what the majority said would have changed their mind. They said, if you want to prove that this wasn't a serious national security measure, let's see the contents of the report. Let's see the pre-decisional material. It's our position. That's what a discovery is entirely meant to do. So it very well could change the court's view. The court also said that, in response specifically to the dissent, that the page was not determinate. And we have to accept that it is reasonable for the majority not to be willing to draw any inference from the page count. The question on the motion to dismiss. And that was the majority, not the dissent. Right. But on a preliminary injunction proceeding, the Supreme Court was able to draw whatever inference it thought was better, supported by the record, correct? But what we're saying is on a motion to dismiss, the district court doesn't decide which inference is more persuasive. It only looks to see whether the inference that we asked the court to draw is reasonable. If it is, it must be drawn in our favor. And our position is you're right. Fewer justices thought that our inference or the Hawaii plaintiff's inference was more persuasive. But as long, unless you say that Justice Sotomayor's view was so unreasonable that we shouldn't even get the benefit of it on a motion to dismiss, we think that we need to be credited with our factual allegations that this was not a thorough worldwide review. You know, the waiver issue. All those issues were addressed expressly by the court. I'm looking here where they go down the proclamation and they look at the face of it and then they give, I have numbered seven reasons why you don't look past and basically they knock down all the dissent arguments and basically said you look at the face of the document and see if there's any basis to justify it. When it began with the face of the document, but I think that's another crystal clear example of a place where the standard of review matters. What the plaintiffs argued there and what we argue here is the fact that the- Well, that's true. That's ultimately. But the court examined the document itself and determined what's the consequence of reviewing the document. And the consequence was you don't look at the nature of the conduct of the investigation. You don't look at this. You look at the face of the document to see if there was a legitimate purpose revealed on it. And then they go down and the third one was just what Judge Pagey said. The time of pages doesn't make any difference. The fourth one, more fundamentally, and then they address the dissents. I think the Supreme Court was very clear that it was not limiting itself to the face of the document. Instead it was playing rational basis review. My question is, instead of saying this is binding, which I think your point is pretty well taken on how to handle Hawaii. But they still analyze the very same proclamation we're looking at and conducted an analysis of that document. And the question is, should we be conducting a different analysis of that document when we conduct our own? Yeah, absolutely. Because they conducted a rational basis review on the merits. Because the question on a preliminary injunction is likelihood of success on the merits. You should be conducting analysis under 12B6. Nothing in the Supreme Court's decision suggested that the complaint failed even to state a claim in Hawaii. Well, they say this pretty categorically. This is the court in Hawaii. Under these circumstances, the government has set forth a sufficient national security justification to survive rational basis review. Period. Right. But under these circumstances. Nothing in condition. That is a component. That finding is a component for them later to apply the preliminary injunction standard. They reached this categorical statement about the document itself. Now, if we conduct that same analysis, follow the court's guidance on that, we would have to get to a different review. We have to then ask, does it plausibly state a cause of action under 12B6? Right. So the sentence that you read began with, under these circumstances, which we think can only refer to a preliminary injunction proceeding on the record before the court. No, no. They were addressing nine factors why the document is rationally supported. And then they said, survive rational basis. That's the only conclusion they're making at this point in the opinion. In other words, one component of their ultimate holding is to find that the document survives rational basis. Now, if the document survives rational basis, then their plaintiffs are not likely to see that was part of the ultimate holding. My question is, if we are conducting the same rational basis review of the same proclamation with the same background facts, what do we conclude if it survives rational basis? What do we conclude in this case if we conclude the proclamation survives rational basis? You would not be concluding that the proclamation survives rational basis. That is a merits question. So we're looking at the same document, and we have the Supreme Court's analysis, and they categorically say it survives rational basis. And so you would ask us to say, look at the same document, apply the same analysis, and conclude it does not survive rational basis. Why? Conclude that it has stated a claim under 12B6. No, we have to start with as a component. Statement of a claim has a lot of components about it. So the one component is, does this proclamation survive rational basis analysis? That's the merits question. In Giortano, this court rejected the notion that you require a plaintiff at the pleading stage on a rational basis challenge to prove the ultimate claim that it fails rational basis. Under the government's approach, it's hard to imagine a rational basis. I'm going to have to prove it. The fact is, all right, I understand what you're saying. It must be plausible. As long as our allegations state it's plausible. So to go to the plausible point, page 15 of your brief, you say the proclamation fails rational basis review because anti-Muslim animus is the only plausible explanation for it. Do you agree that that's what you have to show? In other words, that the only plausible basis, right, or I guess I'm going to include two plausible. It's plausible based on your complaint that the only plausible basis of the proclamation was animus. That's the standard that you have to meet. You have to show that that's a plausible showing for you based on the complaint you've given. Not only a plausible, but the only plausible, because if there is an alternative rational basis, then it survives, right? I want to address both. The relationship, I think, matters. So plausible, as we read Twombly and Iqbal, it says it has to be a plausible basis for relief. So if at this stage of the litigation that we have alleged that it is plausible, that it fails rational basis review, that's good enough to survive motion to dismiss. The animus comes in because you consider the improper purpose in connection with the alleged proper purpose. No, no, but what you say is that, I mean, I'm just reading from your brief, right? So you say the proclamation fails because animus is the, quote, only plausible explanation for it. And what I'm trying to understand, just as a framework, I understand that the ultimate question is a different one, but the framework, you agree that that's what you have to satisfy Iqbal and Twombly on, right? That the complaint suggests, or at least leaves open the possibility under Twombly and Iqbal, that animus is the only plausible explanation for the proclamation. We certainly do anticipate that we will prove that, and yes, I think that's another way to say it. I'm just trying to understand the standard that we're applying. That's what we have to answer. Under Twombly and Iqbal, is it plausible that animus is the only plausible explanation for the proclamation? It's, when you have the situation that we see how, and I would like to talk about how I address this, I'll talk about, they're two kinds, they become like two sides of the coin. Our evidence of animus, No, no, I understand that you say, well, our evidence of animus attacks the government's plausible explanation and discredits them. I understand that, but that's the Twombly and Iqbal analysis. I want to understand, before we get to that, the ultimate question that we have to decide is whether it is plausible that animus is the only plausible explanation for the proclamation. I'm quoting from your brief. I don't think this is a difficult, you think that's right, accept that for a minute. I'm not trying to get you to concede something you don't want to. And then the question that flows from that, I believe, is when the Supreme Court has said there are legitimate explanations, maybe they're illegitimate ones too, but they're legitimate explanations. The Supreme Court has told us that. Help me understand how your animus arguments undermine the Supreme Court's indication that there are legitimate standards. Because the Supreme Court has said that the legitimate standard has to be independent of the illegitimate one. That was precisely what the Supreme Court said in Hawaii. It said we will uphold the proclamation if the national security rationality is independent from the anti-religious hostility. That comes from Romer. Romer says the same thing. It says that the legitimate explanation has to be independent. So in our view, even if there could hypothetically be a national security justification, if it was clear that that was being used as a pretext to attack, to discriminate on the basis of religion, that wouldn't satisfy rational basis of view. Do you mean independent there to mean pretextual? That's one way it could be. I mean, separate from the, we read it to mean that the government can't be motivated by a bare harm, desire to harm a disfavored class. How do you square that with the language the Supreme Court said? The subjective reasons that an action was taken aren't what's at issue. The question is whether there is a legitimate rationale, even after the fact. How do you square that? Because your position seems inconsistent with what I think Judge Niemeyer rightfully pointed out earlier. The Supreme Court has said on a rational basis, we don't look at what actually motivated the action at the time. We look at whether there is a plausible, legitimate justification, even ex post. Well, what Beach Communications said is that you would accept and consider a post hoc justification. So even if the national security justification wasn't, came up with after the fact, you would still consider it. That's not a reason to reject it. But what Romer and even Hawaii says that we wouldn't uphold it on that ground if we looked at the document and determined that the purpose was really discrimination. I don't know if the Supreme Court rejected the offer of Romer and Cleburne in one other case and said they just didn't apply here. They distinguished them on the facts. They thought the facts were different. They made clear that Romer set out the governing standard of how do you apply rational basis review in the context of allegations where the that the law was actually adopted to to harm a disfavored group. No, but what it what it said about Romer, contrasting Romer, it says that here in Hawaii, it's impossible to discern in Romer. It was impossible to discern a relationship to a legitimate state interest. Right. So impossible to discern any legitimate state interest in Romer. Fine. But the Supreme Court has now already told us, in contrast to that, that there is the ability to discern a legitimate governmental interest with respect to the proclamation on the record before it, which is conducted without. Absolutely. I get your point that we're not bound by it, but, you know, on the list of persuasive authorities like it's pretty high. I mean, but it's also there's also I mean, I would go back to the University of Texas versus Kamenish. And I think I get to grasp the difference between we're not bound by it, but they've already decided the issues. But it's hard for me to see the daylight. The key what the reason in University of Texas versus Kamenish that a court that the Supreme Court says you don't treat preliminary injunction rulings as binding a trial on the merits because you can have discovery. You can develop fact that it's and that makes a lot of sense in cases where you're looking ultimately like a preponderance question. Right. But the difficulty you've got is that you've got that scenario, but you're in a rational basis world. Right. And because you're in a rational basis world, the bar is set really low for the government. Right. Wrong or indifferent. And so I get your point is in a standard case involving some factual dispute. It's not binding on the on the back end. And I'm not saying it's technically binding here. But given the very low bar, that is that animus must be the only plausible explanation. It's hard to see how we sort of ignore Hawaii to sort of give your your allegations credit. It's not ignoring. It's just recognition of the fact that rational basis review does depend on the record. The Supreme Court has said a law valid under one set of facts would be invalid under another set of facts. I think Judge Higginbotham and St. Joseph Castile does a good job of reconciling what the Supreme Court said in Beach Communications versus the ultimate the ability of a plaintiff to prove the case. And what he said is there's no evidentiary burden on the government to put forth evidence. But even a seemingly plausible rationale can be negated by proof adduced by the plaintiffs. Plaintiffs can put forward evidence to call into question and to negate the government's rationales. Even in Beach Communications, when it says you don't need evidence, it says you need rational speculation. It has to be reasonable assumptions. How do you know? I mean, those are fact questions, right? We can introduce evidence to negate the rationality of any speculation. They have what Beach Communications says, no evidentiary burden on the government. But what courts have said is that the plaintiff has an opportunity to put forth evidence to negate those explanations. It's got to be a plausible explanation. But you're negating evidence has to plausibly negate the government's justifications, right? I mean, we've heard that all along. Yeah, Judge Schwong said you have a tall order before you to actually prevail on the merits under a rational basis claim. But that's for down the road after discovery, whether we can ultimately prevail. The issue of whether you can demonstrate that animus was the only motivating factor. And that's really what the court said in Romer and what you said in your brief as quoted by Judge Richardson. That's one test. But the Supreme Court also said if it appears that from the document itself there is any rational basis, then it has to be upheld and we don't take that into account under the Beach standard. I would, if I can answer. Of course, of course. The Supreme Court didn't limit itself to the face of the document. We think it definitely looked beyond the evidence and the record. Well, it's looking at the same thing we're looking at. I mean, you pled the documents, you attach the proclamation, and you attach the various documents. Okay. Why don't we hear from Mr. Waldman. Thank you, Your Honors, and I'll try to be brief. Can you start with responding to what I take Mr. Moser's primary point to be? Is that, yes, the Supreme Court accepted as a potentially legitimate rationale the government reasons that are given. But they should have the opportunity to put forward evidence of animus that they contend will overwhelm those justifications and indicate that they're pretextual. Right. The national security interest was just pretextual because of, you know, a sort of weighing of facts. Right. Just like we think about in an employment case where we have pretext that their evidence of animus, he claims, post-discovery could negate the government interest found in Hawaii and that they ought to have the opportunity to do that. Right. I'd like to answer that in three parts, if I could. Right. First, just with what Hawaii said itself, which is, and I'm quoting here, it cannot be said that the proclamation is inexplicable by anything but animus. So they want to get. All right. But he won't. He says. He says, yes, but that's on the standard that they've got. Right. Right. OK. So then you ask sort of what is the standard? And as you pointed out, Judge Richardson, what Iqbal and Twombly asked is whether you have plausible allegations that would meet the applicable legal standard, including the standard as articulated by the Supreme Court, which is why in Twombly, the court said you have to meet the standard that's set forth in Matsushita and Theater Enterprises about the Sherman Act. An agreement. So the question is sort of what is the standard here? And what they want to do is say, well, if we go through discovery, we'll be able to show all these reports and the pre-decisional materials and maybe interrogate witnesses on the stand to show that the rationale is bunk, it's not well supported, et cetera, et cetera. And these communications says that kind of evidence and empirical data is not required at all. And Leo Optical is the is the best case here, which is they want to say, well, why don't you give them their due? In other words, if they could show a meet the Romer standard and they could show that the only motive for doing this was animus, anti-Muslim animus, then they should have an opportunity to demonstrate that. They can show that. So it seems to me if you give them animus as a motivating factor, then you get to your argument. They then have to show that was the exclusive reason. Right. And just just just to address that thing, all of their the way that they want to show animus doesn't at all address the reasons why the Supreme Court said there is no showing of animus, which is to say the Supreme Court had Iraq, Sudan and Chad. All majority Muslim countries were removed from the proclamation since its original inception as an executive order. But the proclamation covers only percent of the world Muslim population, that there are various exceptions to the proclamation, including for non-immigrant visas, which is the majority of visas coming from these countries. And you have the waiver program. And none of those things are really those things stand on the face of the proclamation, regardless of what they want to show in discovery. And what they want to say is, look, this is vastly overbroad and wasteful program that isn't well supported. And the Supreme Court's already decided in the optical. None of that matters under rational basis review. That was the optician, the Oklahoma law about optician. Supreme Court said, is this unnecessary and wasteful? In most cases, maybe so. Is it really necessary to have an opportunity to have a prescription to change old lenses to a new pair of glasses? Not really. Is this, could an optician have your prescription on file anyway and you just get around the law? Of course. Does all of that undermine the law, the aims of the law in most cases? Sure. But is it irrational? No. Because sometimes that's a good reason to have people go get prescriptions. And that's enough for us as a Supreme Court. Because otherwise, you're back in Lochner and you're having judges decide these policy cases, which is most appropriately decided in the democratic forum of the legislature and the president. And that's where we are now. They want to say, we don't think this is a very persuasive policy. We don't think the evidence is good enough. That fails under rational basis review because it can't possibly meet the high standard, even if they could show all that. It can't meet the high standard for rational basis review. And because it doesn't persuasively distinguish between entirely lawful conduct and their claim of unlawful conduct, it doesn't meet the Iqbal and the Twombly standard, which says you have to distinguish between perfectly lawful conduct and unlawful conduct. And that's not met here in this case, Your Honor. All right. Thank you. Thank you. Thank you for these very sophisticated arguments. I think they helped us in our consideration. We're going to come down and greet counsel and then take a short recess. This honorable court will take a brief recess.
judges: Paul V. Niemeyer, G. Steven Agee, Julius N. Richardson